**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **DAVID BOCCABELLA,** | * |
| Plaintiff, | * |
| v. | Case No.: GJH-19-3583 |
| | * |
| **TRICK TRUCK, INC. d/b/a TRICK TRUCKS & CARS, Inc.,** | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff David Boccabella brought this civil action alleging that Defendant Trick Truck, Inc. ("Trick Trucks") engaged in unlawful racial discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and 42 U.S.C. § 1981. ECF No. 1 Pending before the Court is Defendant's Motion for Partial Summary Judgment. ECF No. 5. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's Motion for Partial Summary Judgment is granted.

**I.   BACKGROUND[1]**

Defendant Trick Trucks, founded in 1974, offers car and truck customization and conversion services. ECF No. 5-1 at 2;[2] ECF No. 5-2 ¶ 3. Trick Trucks operates a retail location in Kensington, Maryland, where it employs eight people. ECF No. 5-1 at 2; ECF No. 5-2 ¶ 3. Defendant Trick Trucks is co-owned by Larry Leizear and Kenneth New. ECF No. 5-1 at 2; ECF No. 5-2 ¶ 2. Mr. Leizear is responsible for managing the Kensington retail location day-to-day, including making all personnel decisions. ECF No. 5-1 at 2; ECF No. 5-2 ¶¶ 5–6. There are ten

---

[1] These facts are either undisputed or viewed in the light most favorable to the Plaintiff as the non-moving party.
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

1

retail facilities, including Defendant, operating under the Trick Truck name in the states of Maryland, Virginia, West Virginia, and Delaware ("Trick Truck entities"). ECF No. 5-2 ¶ 2; ECF No. 6-1 at 1–2.

Plaintiff Boccabella was hired by Defendant Trick Trucks in or before April 2015. ECF No. 1 ¶ 9; ECF No. 5-1 at 2; ECF No. 6-1 at 3.[3] Plaintiff is a Caucasian male with an African American spouse. ECF No. 1 ¶ 8. Everyone at Trick Trucks knew that Plaintiff Boccabella's wife was African American because she often came by Trick Trucks with Plaintiff's kids and she was introduced as his wife. *Id.* ¶ 11. According to Plaintiff, from the start of his employment and because of his interracial relationship, he was subjected to racial animus in the form of direct comments and disparate treatment by other mechanics and Trick Truck supervisors. *Id.* ¶ 9. For example, Plaintiff Boccabella alleges that: (1) Byron Honeywell, a managing supervisor at Defendant Trick Trucks, called Plaintiff "nigger" on an almost daily basis, *id.* ¶ 12; (2) Mr. Honeywell denied Plaintiff use of the radio, customary to employees at Trick Trucks, because Mr. Honeywell claimed "Plaintiff would only play 'coon music[,]'" *id.* ¶ 13; (3) Mr. Leizear and Mr. Honeywell denied Plaintiff a key to the Trick Trucks facility, unlike other Caucasian employees, *id.* ¶ 14; (4) after Plaintiff gave an African American man money for food, Mr. Honeywell and other Trick Truck employees yelled at Plaintiff, "Does he have a sister you want to fuck?[,]" *id.* ¶ 15; and (5) Mr. Honeywell accused Plaintiff of saving second-hand parts for "those customers," referring to African American customers with limited income, *id.* ¶ 18. Additionally, according to Plaintiff, Mr. Honeywell and Mr. Leizear demonstrated evidence of extreme racism in contexts unrelated to Plaintiff. *Id.* ¶¶ 16–17, 19–21.  Plaintiff alleges that he

---

[3] Plaintiff's actual start date at Defendant Trick Trucks is unclear from the briefing. ECF No. 1 ¶ 3 ("Mr. Boccabella began working for Trick Trucks in or about January 2012[.]"); ECF No. 5-1 at 2 ("The Company employed Plaintiff from April 6, 2015, to October 31, 2017."); ECF No. 6-1 at 3 ("Trick Truck, Inc., employed Mr. Boccabella . . . from about October 2014 to November 2017").

2

complained to Mr. Leizear throughout his employment about the racial epithets and disparate treatment, but "nothing was ever done to address the extremely hostile work environment." *Id.* ¶ 22.

On October 23, 2017, Plaintiff's relationship with Defendant Trick Trucks came to a breaking point when, according to Plaintiff, Mr. Honeywell subjected Plaintiff to more racial remarks after a disagreement about work on a van. *Id.* ¶ 23. As a result of this incident, Mr. Honeywell claimed that Plaintiff refused to work. *Id.* This time, when Plaintiff went to Mr. Leizear, Mr. Leizear allegedly told Plaintiff that "'yes, he's racist [referring to Mr. Honeywell] and a bigot but we all have to deal with him,' or words to that effect." *Id.* ¶ 24 (alteration in original). Following this conversation, Mr. Leizear told Plaintiff to take time off and return to work after a week. *Id.* ¶ 25. When Plaintiff returned, instead of disciplining or firing Mr. Honeywell, Mr. Leizear told Plaintiff to try to work at Trick Trucks' Frederick location. *Id.* ¶ 26. However, when Plaintiff went to the Frederick location, he was informed he would only earn half his normal pay. *Id.* Plaintiff returned to the Kensington location on November 6, 2017, to voice his concern about the pay decrease, but instead was told by Mr. Leizear that he was fired and that Plaintiff "didn't fit in with us[.]" *Id*. ¶ 27.

Plaintiff Boccabella filed this action on December 17, 2019, after receiving a right to sue letter from the Equal Employment Opportunity Commission. ECF No. 1 ¶ 7. In his Complaint, Plaintiff alleges Discrimination, Hostile Work Environment, and Retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.*, in Counts I–III and Discrimination and Harassment Based on Race in Violation of 42 U.S.C. § 1981 in Count IV. Defendant Trick Trucks filed the instant Motion for Partial Summary Judgment on March 18, 2020. ECF No. 5.

The Motion seeks Summary Judgment as to Counts I–III. *Id*. Plaintiff responded in opposition on May 13, 2020, ECF No. 6, and Defendant replied on August 4, 2020, ECF No. 7.

**II.     STANDARD OF REVIEW**

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted). The Court may rely only on facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citation omitted). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citation omitted).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448–49 (4th Cir. 2011) (citation omitted). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that

party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To adequately raise the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods Ltd.*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)). Notably, "'Rule 56(d) affidavits cannot simply demand discovery for sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see also Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd.*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary

judgment ruling that is obviously premature. According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court served as the functional equivalent of an affidavit." *Id.* at 244–45 (citations and internal quotation marks omitted).

**III. DISCUSSION**

Title VII provides that it is unlawful for an "employer" to discriminate against an employee because of the employees' race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). As defined in Title VII, "'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" *Id.* § 2000e(b). "An employer who employs fewer than fifteen employees does not satisfy Title VII's statutory definition of employer and, therefore, is not subject to discrimination actions founded on Title VII." *Tasciyan v. Med. Numerics*, 820 F. Supp. 2d 664, 671 (2011) (citing *Walters v. Metro. Educ. Enter., Inc.*, 519 U.S. 202, 212 (1997)).

A plaintiff may, however, bring a Title VII claim against an employer with fewer than fifteen employees where that employer is "integrated" with one or more additional employers with a sufficient number of employees. *Id.* (citing *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 874 (D. Md. 2000)). "Courts apply the 'integrated employer test' to make this determination." *Id.* The integrated employer test has four factors: "(1) common management; (2) the interrelation between operations; (3) centralized control; and (4) the degree of common ownership and financial control." *Glunt*, 123 F. Supp. 2d at 874. In applying the integrated employer test, courts have found that the third factor, centralized control of labor relations,

predominates, *Freire v. Keystone Title Settlement Servs., Inc.*, No. AW-08-2976, 2009 WL 5217033, at *4 (D. Md. Dec. 30, 2009) (citing *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999)), while the last factor, common ownership, is the least important, *Thomas v. Bet Sound-Stage Rest./BrettCo., Inc.*, 61 F. Supp. 2d 448, 456 (D. Md. 1999) ("The first three factors are weighed more heavily than the last."). Courts have also noted the following important considerations in applying the four factors of the integrated enterprise test for purposes of Title VII liability:

> (1) one company's employees hired and fired the other's employees and/or authorized [layoffs], recalls, and promotions of such employees; (2) one company routinely transferred employees between it and the other company, used the same work force, and/or handled the other's payroll, (3) one company exercises more than general oversight of the other's operations by supervising the other's daily operations, such as production, distribution, purchasing, marketing, advertising, and accounts receivable, (4) the companies have common management in the form of interlocking boards of directors and/or common officers and managers, (5) the companies fail to observe basic formalities like keeping separate books and holding separate shareholder and board meetings, (6) the companies fail to maintain separate bank accounts, and (7) the companies file joint tax returns.

*Glunt*, 123 F. Supp. 2d at 874 (quoting *Thomas*, 61 F. Supp. 2d at 456).

Both parties agree that the Kensington location of Trick Trucks does not have fifteen or more employees and thus, on its own, does not qualify as an employer under Title VII. ECF No. 1 ¶ 10; ECF No. 5-2 ¶ 3. However, the record reflects a fundamental disagreement between the parties about whether Defendant Trick Trucks and the other nine retail locations bearing the Trick Truck name are an integrated employer.

The Fourth Circuit's decision in *Hukill,* 192 F.3d 437, guides this Court's decision as to that question. There, the plaintiff alleged that his employer had violated the Family and Medical Leave Act ("FMLA"). *Id*. at 438. The plaintiff's direct employer, McGillicuddy Associates, Inc. ("MAI"), an automotive service station, had fewer than 50 employees, which was insufficient to

7

meet the jurisdictional threshold for the FMLA;[4] however, the plaintiff claimed that several related corporations, along with MAI, constituted an integrated employer with a sufficient number of total employees to meet the threshold. *Id*. Notably, the record from the trial court established that the sole owner of MAI also owned fifty percent shares in seven other corporations; *id*. at 439, a number of the corporations were automobile service stations like the defendant; *id*., some employees were transferred between stations, *id.* at 441; and one of the corporations provided contract administrative services to each of the others, which included payroll services, bookkeeping, health care administration, the issuance of policy statements (such as a substance abuse policy), and a site for the maintenance of personnel records. *Id.* at 439.

In *Hukill*, the Fourth Circuit analyzed each of the factors guiding the integrated employer test. First, with respect to common management, the Fourth Circuit noted that each station had its own manager controlling day-to-day operations with the authority to hire and fire employees at that individual station. *Id*. at 443. Notably, there was a period where one individual was the general manager of all the stations, but that person did not manage day-to-day operations. *Id*. With respect to interrelation of operations, the Fourth Circuit identified various points of interrelation, including shared services, bulk purchases of equipment, transfer of employees between stations, and advertisements suggesting common affiliation. *Id.* However, the Fourth Circuit found more persuasive the fact that operations existed at separate facilities, separate tax returns were filed, banking operations were segregated, that as a general matter goods were

---

[4] Although *Hukill* involved the FMLA, the Fourth Circuit noted in its opinion that the integrated employer test had been used in the context of Title VII actions. *Hukill*, 192 F.3d at 442. Additionally, *Hukill* operated under the assumption that the question of whether a Defendant had a sufficient number of employees to be deemed an employer was a jurisdictional question and not simply an element of the claim. *See id.* Later, the Supreme Court held in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006), that the question was not jurisdictional and *Hukill* has since been recognized as having been abrogated, *Gilbert v. Freshbikes, LLC*, 32 F.Supp. 3d 594, 602 (D. Md. 2014). However, whether the question goes to jurisdiction or the merits of the claim does not impact *Hukill's* analysis of the integrated employer test.

purchased separately, office space was not shared, and day-to-day management was conducted by different individuals. *Id*. Regarding centralized control of labor relations, notwithstanding evidence of employee transfers mentioned above, the Fourth Circuit determined there was little, if any, evidence that the control of labor operations was centralized. *Id.* There was no mutual supervision or shared power to control work schedules. *Id.* Finally, as to common ownership, there did exist common, but not identical, ownership, but the Fourth Circuit determined that was insufficient to establish an integrated employer, when coupled with other factors. *Id*. at 444.

After considering each factor of the integrated employer test, the Fourth Circuit held that the corporations were not an integrated employer. In reaching this conclusion, the Fourth Circuit indicated that the goal of the integrated employer test is to determine "what entity made the final decisions regarding employment matters related to the person claiming discrimination." *Id*. (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). The Fourth Circuit concluded that, based on the record before it, MAI had made the final decision regarding the plaintiff's employment and thus the related corporations were not integrated employers. *Id*. at 444.

Here, Plaintiff's argument that the Trick Truck entities is an integrated employer is weaker than the argument rejected by the Fourth Circuit in *Hukill,* even when taking all facts in the light most favorable to Plaintiff. With respect to common management, like the corporations analyzed in *Hukill*, each Trick Truck entity has its own manager, who controls the day-to-day operations of the facility and has the authority to hire and fire employees. ECF No. 5-2 ¶¶ 4–6, 15; ECF No. 7-3 ¶¶ 2–3. Additionally, Defendant submits evidence that Mr. Leizer has "no management responsibilities for any other business, company, or entity operating under the Trick Truck name, including Trick Trucks Seven and Trick Trucks Ten[,]" which are the other entities

9

in which Mr. Leizear has an ownership stake. ECF No. 5-2 ¶ 5. In contrast, Plaintiff attests that in November 6, 2017, he was told by Mr. Leizear "to report to Trick Truck's Frederick location." ECF No. 6-5 ¶ 5. Upon reporting there, he was not required to interview or apply, and they appeared "ready to have [him] start work based on Mr. Leizear's decision." ECF No. 6-5 ¶ 6. Defendant disputes this characterization but, even accepting Plaintiff's version, this one failed transfer attempt is less than the evidence of employee transfer held to be insufficient in *Hukill*. Thus, the common management factor of the integrated employer test weighs in Defendant's favor.

Just as in *Hukill*, the operations of the Trick Truck entities are interrelated to some degree. Defendant Trick Trucks "pools resources with one other entity, Frederick Truck & Auto Accessories, Inc., to establish a 401k plan for its employees." ECF No. 5-2 ¶ 8. There is also evidence that the Trick Truck entities present themselves as a single business and share a website, social media accounts, and the use of the same 1-866 number. ECF No. 6-3; ECF No. 6-4; ECF No. 6-6; ECF No. 6-7; ECF No. 6-8; ECF No. 6-9; ECF No. 6-10.[5] Finally, Plaintiff states in his declaration—a statement directly disputed by Mr. Leizear's and Mr. Smith's declarations, ECF No. 5-2 ¶ 7; ECF No. 7-3 ¶ 4; ECF No. 7-4 ¶¶ 27–30—that he knew "that all of the Trick Truck locations ordered their inventory and parts together under one umbrella." ECF No. 6-5 ¶ 8.

Although this evidence demonstrates some interrelationship of operations, on balance, this evidence is outweighed by evidence indicating that each entity operates separately and

---

[5] Defendants argue that the Court should not consider the printouts of these websites because, lacking authentication, the printouts are inadmissible hearsay. ECF No. 7 at 9. However, hearsay aside, Plaintiff's evidence is insufficient to support a finding that the Trick Truck entities are integrated and thus the Court will discuss the printouts for the sake of this motion. *See Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, 510 F. App'x 223, 227 (4th Cir. 2013) (citation and internal quotation marks omitted) ("A court may take judicial notice of information publicly announced on a party's web site, so long as the web site's authenticity is not in dispute and 'it is capable of accurate and ready determination.'").

independently. The Trick Truck entities operate at separate locations, ECF No. 6-6, maintain separate bank accounts, ECF No. 5-2 ¶ 7, file separate tax returns, *id.*, maintain separate payroll and personnel, *id.*, have separate telephone numbers and email addresses, ECF No. 6-6, maintain separate health insurance policies for their employees, ECF No. 5-2 ¶ 7, and are not managed day-to-day by the same person, *id.* ¶ 5; ECF No. 7-3 ¶ 2.  Moreover, at least some Trick Truck entities have a separate website and social media pages. ECF No. 7-5. Therefore, the interrelation of operations factor of the integrated employer test also weighs in favor of the Trick Truck entities not being integrated. *See Hukill*, 192 F.3d at 443; *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 587 (S.D.N.Y. 2020) (finding that having a single website, common name, or centralized point of contact was insufficient to find that the businesses were integrated under the employer integration test and citing to other cases finding the same); *Freire*, 2009 WL 5217033, at *4 (holding that Plaintiffs' webpage printout does not show integration).

      There is little, if any, evidence that control over labor relations is centralized. Defendant Trick Trucks presents evidence that it has no role in the other Trick Truck entities' labor relations; Defendant Trick Truck has no power to hire, fire, supervise, or schedule the employees of the other Trick Truck entities. ECF No. 5-2 ¶¶ 5–7; ECF No. 7-3 ¶¶ 2–4. Plaintiff fails to rebut this evidence. Similarly, Defendant presents evidence that the other Trick Truck entities lack any control over Defendant's personnel, and Plaintiff does not present any evidence to the contrary. ECF No. 5-2 ¶¶ 5–7; ECF No. 7-3 ¶¶ 2–4. In light of this evidence, the Court concludes the centralized control prong of the integrated employer test weighs heavily against Plaintiff. *Hukill*, 192 F.3d at 444 (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993)) ("To satisfy the control prong, a parent must control day-to-day employment decisions of subsidiary.").

Finally, just as in *Hukill*, there is evidence of common, though not identical, ownership. ECF No. 5-2 ¶ 4 ("[Mr. Leizear] own[s] 25% share in two other companies operating under the Trick Truck name"—in addition to Defendant Trick Trucks—one such entity has three owners and the other four). However, such a showing is not enough to establish that the Trick Truck entities are an integrated employer. *See Hukill*, 192 F.3d at 444 (quoting *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 982 (4th Cir. 1987) ("One-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis"). Moreover, even if Plaintiff were to find that Mr. New—the other owner of Defendant Trick Trucks—held a substantial ownership stake in every Trick Trucks entity, the common ownership prong of the integrated employer test is the least important of the factors. *See Thomas*, 61 F. Supp. 2d at 456. Since the other three integrated employer factors weigh in Defendant's favor, evidence of substantial common ownership would not change the Court's finding that the Trick Truck entities are not integrated under the integrated employer test.

Because Plaintiff has not produced sufficient evidence for a jury to find that Defendant Trick Truck is integrated with the other Trick Truck entities under the four-prong integrated employer test, the Court finds Defendant Trick Trucks is not an employer for the purposes of Title VII. Thus, the Court grants Defendant's Motion for Partial Summary Judgment and enters judgment in Defendant's favor on Plaintiff's Title VII claims (Counts I–III).

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is granted. A separate Order shall issue.

Date: February   22, 2021                              __/s/_____
                                                                        GEORGE J. HAZEL
                                                                        United States District Judge